**BURTON et ux. v. WILLIAMS.**

No. 2677.

Court of Civil Appeals of Texas.
Tenth District.

May 22, 1946.

Rehearing Denied June 13, 1946.

Tyson, Dawson & Dawson, of Corsicana, for appellants.

Doyle Pevehouse and A. V. McCall, both of Corsicana, for appellees.

TIREY, Justice.

Appellants, plaintiffs below, brought this suit to partition a tract of land containing 61.6 acres in Navarro county. They alleged substantially that because of the smallness of the tract and that it had one set of improvements only, it was incapable of partition in kind except at a loss in value, and that they were entitled to be reimbursed for improvements; and they prayed that said land be sold by a receiver and the proceeds divided as the interests of the parties appear. In the alternative, they prayed that the land be partitioned in kind to the owners and that the court set aside their interests to them in severalty and for compensation for improvements. Defendants, in their first amended original answer and cross-action, averred substantially that they were entitled to certain improvements and that the land was susceptible of being partitioned in kind and that it would be to the best interests of all the parties that defendants have their 7/18 interest set aside as a whole to them and that plaintiffs have their 11/18 interest set aside as a whole to them, and prayed "the court adjudge that said land involved in this suit is susceptible of partition in kind * * * that commissioners be appointed and a writ of partition issue, and that defendants have title to and possession of that portion of said land they have made improvements on, on the east side thereof * * *." It was stipulated by the parties that plaintiffs owned an 11/18 interest in the land and that defendants owned a 7/18 interest. The jury found (a) that the land was susceptible to a fair and equitable partition by setting aside to the plaintiffs 11/18 thereof and the defendants jointly 7/18; (b) that defendants, Mrs. Maude Harris and husband, had, during their occupancy of the land and at their expense, placed improvements upon the property which had increased the present market value of the land in the sum of $506; and (c) that plaintiffs, J. L. Burton and wife, had, during their occupancy of the land and at their expense, placed improvements upon the property which had increased the present market value of the land in the sum of $365. Plaintiffs seasonably filed their motion for judgment in which they asked the court to disregard the jury's answer to Special Issue No. 1 and enter a decree to the effect that said land could not be partitioned in kind, which motion was overruled. The court granted defendants' motion for judgment on the verdict of the jury and entered decree for partition and appointed commissioners to partition the land, which decree provided in part "that Share No. 1 thereof, which shall include the homestead and improvements necessary to its reasonable enjoyment, shall equal in value 7/18ths of the entire tract of land, plus $141.00, the difference between $506.00 of improvements placed on said land by the defendants, Mrs. Maude Harris and her husband, J. B. Harris, and $365.00 of improvements placed on said land by the plaintiffs, J. L. Burton and his wife, Mrs. Vannah Burton, and Share No. 2 shall include therein a sufficiency of land to equal 11/18ths in value of the entire tract of land, less said $141.00, that is, Share No. 1 to be set aside to the defendants, Dock Williams, Mrs. Dora Anderson, Mrs. Maude Harris and her husband, J. B. Harris, jointly, and Share No. 2 to be set aside to the plaintiffs, J. L. Burton and his wife, Mrs. Vannah Burton." Plaintiffs appealed from this decree.

Appellants assail the judgment (1) on the ground that the court erred in submitting Special Issue No. 1, as follows: "Is the land in question susceptible of a fair and equitable partition between plaintiffs and defendants by setting aside to

the plaintiffs 11/18ths and to the defendants jointly 7/18ths thereof?" and (2) that the answer of the jury that it was is not supported by but is contrary to the overwhelming weight of the evidence. We overrule each of these contentions.

Appellants objected to Special Issue No. 1 substantially because all the evidence tendered showed that the land should not be partitioned in kind except at a material shrinkage and loss in its market value and that the question submitted propounds to the jury a question of law. We cannot agree with either of these contentions. It is true that appellants tendered testimony to the effect that "it would be more valuable to leave it just like it is, in a whole block." Other witnesses testified in part: "It would decrease its value to cut it in two and offer it for sale in two tracts, because you couldn't get a buyer for it. If you cut it up in less than a fifty acre block it wouldn't be a self-sustaining unit * * * I would say it would bring less money by cutting it up * * * the part which had the improvements on it would not be a self-sustaining unit and the other part would be wholly unimproved and it would be mighty hard to sell. It would damage and depreciate the value of a 61 acre tract by dividing it 2/3rds in one piece, or approximately that, and 1/3rd in the other * * * it would be hurt 30% in value by cutting it up in shares. Well I figure it would bring anywhere from five to seven hundred dollars more as a whole than it would be to cut it into two pieces."

Jim Richards, tendered by appellants, testified, without objection, in part:

"Q. Would it damage and depreciate the value of a 61 acre tract by dividing it two-thirds in one piece, or approximately that, and one-third in the other? A. Yes, sir.

"Q. Percentagewise, Mr. Richards, how much would it depreciate the value, in your opinion? A. Well, now, that's a pretty hard proposition; in these times there is no lumber available; you couldn't build another house; it is according to who got the house and who got the naked land, and the fellow who got the naked land, if he didn't have some place close

by—real close by, he wouldn't want it at all. * * *

"Q. Irrespective of the amount, having it close by would make it worth more? A. It does.

"Q. I am talking about putting it on the market to try to find a buyer? A. Yes.

"Q. Percentagewise, how much would the land be hurt by cutting a 61 acre tract approximately. * * * A. I would say thirty per cent.

"Q. It would be hurt thirty percent by cutting it up in shares? A. Thirty per cent. * * *

"Q. Mr. Richards, Mr. Burton does have some property near by there, doesn't he? A. Uh, huh.

"Q. It joins this property on the north? A. Yes.

"Q. With improvements on it? A. Yes."

Since it is without dispute that appellants owned an 11/18 interest in the tract to be partitioned and that they owned the tract adjoining on the northern end thereof, it is obvious that Mr. Richard's testimony alone raised a jury question. Other vital issues were raised by the evidence without dispute, such as betterments, improvements and the question of the homestead of Harris and wife. It follows that we are of the opinion that the issue did not submit a question of law to the jury. It is well settled that the amount of the recovery for improvements is limited to the value of the enhancement of the property at the time of partition, and of course this was a jury question. See Clift v. Clift, 72 Tex. 444, 10 S.W. 338; Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620.

Partition of real estate in Texas is controlled by Title 104, Rev.Civ.Stats., Vernon's Ann.Civ.St. art. 6082 et seq., and Sec. 3, Rules 756–771 incl., T.R.C.P. In Texas our courts have uniformly recognized that in the partition of real estate, the district court should exercise its equity power. In this state "partition by suit, whether brought under the statute or without the aid of the statute, does not proceed independently of the rules of equity * * *." Thomas v. Southwestern Set-

tlement & Development Co., 132 Tex. 413, 123 S.W.2d 290, points 3 and 4, page 296. In the case at bar the plaintiffs and defendants are cotenants, one of the defendants, Mrs. Harris, and her husband having asserted and claimed a homestead interest in the property since 1941. In Moor v. Moor, Tex.Civ.App., 63 S.W. 347, 351 (writ refused), we find this statement of the law: "It may be assumed from the original decree that the district court exercised, for reasons sufficiently apparent to it, this equity power in not following the letter of the statute in its direction to the commissioners, and it sufficiently appears from the testimony in the case that exact equity could not have been attained by the commissioners proceeding by lot, after dividing the property into equal parts; for the appellee upon one of the parcels of realty had her home, and was entitled to have it assigned to her along with her one-half of the community property. If they had proceeded by lot, this piece of property that the appellee was entitled to have assigned her with her portion would have been as apt to fall to the appellant as to her." This doctrine was reannounced by our Supreme Court in Dakan v. Dakan, supra, par. 31, wherein it said [125 Tex. 305, 83 S.W.2d 629]: "The district court has the power to determine and adjust the rights of the parties in this suit, and may justly treat this as an equitable partition proceeding. In making such partition, all of the property in which the parties are jointly interested should be dealt with as a whole, and partition made, as far as possible, in kind, giving due recognition to the homestead rights." Our Supreme Court in Sayers v. Pyland, 139 Tex. 57, 161 S.W.2d 769, 771, 140 A.L.R. 1164, reaffirms the doctrine announced in Moor v. Moor, supra, and Dakan v. Dakan, supra, and says: " '* * * one cotenant may have an account from another for rents and profits received, waste committed, moneys fraudulently obtained, betterments made, and taxes, etc., paid either as an incident of a partition suit or otherwise.' * * * In a partition proceeding the court has a right to adjust all such equities, and, if necessary, to fix a lien to secure the payment of same. * * * It is also well recognized that in partition proceedings the court may, if necessary, divide the property into shares of unequal value and fix a lien on the larger share in favor of the party receiving the smaller share, for the difference." Applying this rule to the factual situation here presented, we think it is clear that the diminution in value to the tract to be partitioned is only one of the equities to be adjusted between the parties. In the case at bar the evidence is sufficient to support the jury's finding that plaintiffs and defendants had made improvements and betterments to the property which had increased its market value and the partition decree instructs the commissioners to take these matters into account. In partitioning land all equities should be considered and adjusted. Cleveland v. Milner, 141 Tex. 120, 170 S.W.2d 472; Thomas v. Southwestern Settlement & Development Co., 132 Tex. 413, 123 S.W.2d 290. Rule 771, T.R.C.P., provides: "Either party to the suit may file objections to any report of the commissioners in partition, and in such case a trial of the issues thereon shall be had as in other cases. If the report be found to be erroneous in any material respect, or unequal and unjust, the same shall be rejected, and other commissioners shall be appointed by the Court, and the same proceedings had as in the first instance." Since it appears in the record without objection that plaintiffs Burton and wife owned the tract on the north adjoining the tract to be partitioned, and since the decree provides that Burton and wife shall receive their 11/18 out of the northern part, appellants' theory in argument that the tract set aside to them would be isolated and that they would be greatly damaged is not supported by any factual basis, nor can we now say that said commissioners will deal unjustly with them.

Appellants' third and sixth points complain of the court's refusal to submit their requested special issues Nos. 2 and 5 respectively. The record shows that the court refused to consider appellants' requested special issues, to which action of the court appellants excepted. It appears from the bill of exception that the testimony was closed at approximately 4:30 p.m. on November 6, 1945, and the

jury was excused until 10 o'clock the next day. At the court's request counsel remained at the courthouse to receive his charge, which he handed to them about 5:30 p.m. of that afternoon. He requested counsel to submit their objections and their requested special issues to him at 9 a.m. the next morning. Appellants delivered their objections to the charge to the court at approximately 9:45 a.m. on November 7th. These objections were considered and overruled by the court and he ordered them filed as a part of the record in the case at approximately 9:50 a.m. on November 7th. Appellants' attorneys informed the court that their requested special issues were being transcribed and would be presented to the court within a short time and the court replied that in his opinion counsel had had ample time in which to prepare their requested special issues and it was his intention to read the charge to the jury promptly at 10 o'clock and that if counsel desired to have their requested special issues considered, they should be delivered to the court by 10 a.m. Counsel replied that they had been unable to secure the services of a stenographer on the afternoon of November 6th and for that reason was unable to begin the preparation of their requested special issues until about 9 a.m. November 7th, and requested the court to delay reading his charge until the requested special issues could be brought to the courthouse and considered, which the court refused to do. The court read his charge to the jury beginning promptly at 10 a.m. Thereafter, counsel for appellants began their opening argument and during the opening argument counsel's stenographer brought into the courtroom the requested special issues here referred to, and when counsel had finished the opening argument they then presented the issues here referred to to the court. The court refused to consider such issues and stated that while it was the intention of the court always to grant counsel ample time in which to prepare requested special issues and objections to the charge, he was of the opinion that seventeen and one-half hours was ample time in which to prepare same and for that reason refused to consider the same. Appellants excepted on the ground that "such action of the court was arbitrary, unfair and unreasonable in that the court had not allowed a reasonable or sufficient time during office hours within which to prepare objections to his charge and special issues to be requested in lieu of his charge; that the time allowed by the court was less than one hour during regular office hours * * *." The record shows that appellants filed their original petition in June, 1945. The cause proceeded to trial on November 5, 1945. This court believes that the trial court should grant a reasonable time to counsel in which to prepare and present objections to the court's charge. We also feel that the court should be reasonable in allowing counsel a reasonable time in which to prepare and present requested special issues; but under the record here presented we cannot say that the trial court abused his discretion in refusing to consider the requested special issues of appellants. Moreover, appellants, in their motion for new trial, did not allege that the court abused his discretion in refusing to consider appellants' requested special issues. Since the court did refuse to consider appellants' requested special issues because they were not presented to him within a reasonable time, appellants' third and sixth points were waived. See Rules 320 and 321, T.R.C.P.; also Traders & General Ins. Co. v. May, Tex.Civ.App., 168 SW.2d 267, points 4 and 5, p. 270.

Appellants' seventh point is that the decree of partition "arrogates and assumes to award to the defendant the improved and valuable end of the land in question, and that which is more readily marketable, whereas plaintiffs should have an equal opportunity of recovering their 11/18ths in value on the improved end." Since the record is without dispute that defendant Harris and wife were asserting a homestead claim in and to the land, and defendants were asking that their homestead interest be set apart to them by virtue of the improvements they had made thereon and because they desired to retain their interest as a homestead (appellants did not assert a homestead interest), this contention is of no avail under the doctrine set forth in Moor v. Moor, supra,

Dakan v. Dakan, supra, and Sayers v. Pyland, supra.

We have carefully considered each of the other assignments of error and each is overruled.

The judgment of the trial court is affirmed.